THE PEOPLE *ex rel.* W. J. Shipton, County Collector, Appellant, *vs.* THE DUNLEITH AND DUBUQUE BRIDGE COMPANY, Appellee.

*Opinion filed June 16, 1926.*

1. TAXES—*when railroad bridge across Mississippi river is assessable as railroad track.* Bridge companies owning nothing but bridges are to be assessed as to such property by the local assessor, but a railroad bridge across the Mississippi river is assessable as "railroad track" by the State Tax Commission where the bridge and tracks thereon are owned by a consolidated corporation, the original companies of which were incorporated under the laws of Illinois and Iowa for railroad purposes, and are used, by agreement or lease with railroad companies, for railroad purposes only, notwithstanding the company exists under the name of a bridge company and it has no rolling stock. (*Chicago and Alton Railroad Co.* v. *People,* 153 Ill. 409, and *People* v. *Keokuk and Hamilton Bridge Co.* 287 id. 246, distinguished.)

2. SAME—*when county collector waives objections to evidence.* While the county collector is not required to plead in answer to an owner of property objecting to taxes he is bound by the ordinary rules of evidence and must object to the introduction of evidence which he regards as improper and waives specific objections not made or included in any general objection raised to evidence.

3. CORPORATIONS—*how consolidation of corporations may be authorized.* The sanction of the State to the consolidation of corporations may be expressed by authority given in a general law, or it may be done by the special charters of the consolidated companies granted before consolidation, or by a subsequent legislative ratification of an unauthorized consolidation.

4. SAME—*defects in organization of corporations may be cured by validating acts.* The legislature may by the passage of validating acts cure defects in the organization of corporations, and such an act is a complete defense even to an action in the nature of *quo warranto,* as the legislature may do by the curative act whatever it might have done in the first instance.

5. SAME—*effect of consolidation of corporations of different States.* Where two corporations incorporated under the laws of Illinois and of another State, respectively, become consolidated by virtue of an act of consolidation and under the sanction and by the authority of both States, the new corporation acquires and suc-

ceeds to all the faculties, property rights and franchises of the original corporations and becomes subject to all the duties, obligations and conditions imposed upon them, while the original corporations lie dormant and cease to exist as separate corporations.

APPEAL from the County Court of Jo Daviess county; the Hon. H. L. HEER, Judge, presiding.

HARRY C. TEAR, State's Attorney, (M. H. CLEARY, of counsel,) for appellant.

GEORGE A. DUPUY, FRANK T. SHEEAN, and EDWARD C. CRAIG, (W. S. HORTON, of counsel,) for appellee.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

The State Tax Commission on December 10, 1923, assessed the property of appellee, Dunleith and Dubuque Bridge Company, as "railroad track" and at the assessed valuation of $171,021, and filed its return of the said assessment in the office of the county clerk of Jo Daviess county. The board of review of the said county, over the objection of the appellee, also assessed the same property for the year 1923 at $300,000 after finding that the full value was $600,000, and assessed it on the theory that the property was not "railroad track." The county clerk of the county extended the taxes levied by the State, county, township, school district, road authorities and all other municipal and *quasi* municipal corporations against the property of appellee in Dunleith township on both assessments, the taxes extended on the property as assessed by the State Tax Commission amounting to $8855.16 and the taxes extended on the assessment made by the board of review amounting to $15,480. It was stipulated in the record that "the taxes as extended and shown in the collector's book of 1923 of Dunleith township, Jo Daviess county, Illinois, which have been introduced in evidence, are the taxes

that have been extended against the Dunleith and Dubuque Bridge Company by the assessment made by the board of review of the county of Jo Daviess, and that it is the same taxes that have been extended in both cases, one on the assessment made by the board of review of the county of Jo Daviess and the other on the assessment by the State Tax Commission and against the same property." Appellee on April 30, 1924, paid to the county treasurer and collector of Jo Daviess county the sum of $8855.16, being the amount of the taxes extended on the assessment made by the State Tax Commission, and obtained from the county treasurer of that county a receipt therefor. The county treasurer and collector of taxes of Jo Daviess county filed an application in the county court of that county for judgment and order of sale against the property of the Dunleith and Dubuque Bridge Company for delinquent taxes for the year 1923. The bridge company, appellee, filed five objections to the taxes returned delinquent against this property, and upon a hearing the county court sustained objections Nos. 1 to 4, inclusive, and overruled objection No. 5, and refused the application of the collector. The People, on the relation of the collector aforesaid, (hereinafter referred to as appellant,) have appealed.

Appellee is the owner of a railroad bridge across the Mississippi river extending from Dunleith, (East Dubuque,) Illinois, to Dubuque, Iowa. The record shows that the bridge proper, from its terminus on the Illinois shore to the west end of the bridge at its terminus on the Iowa shore of the Mississippi river, is about 1535 feet in length, and is so constructed that it can be crossed only by railroad cars and locomotives and railroad trains. It has never been used except for the transportation of railroad cars and locomotives and railroad trains and the passengers and traffic carried by those trains. Appellee also owns the railroad tracks on the bridge, and about one mile of railroad track and right of way extending from the west end of

the bridge in Iowa to Jones street, in Dubuque, and some industrial tracks or side-tracks running from Jones street to or toward the west end of the bridge. The railroad track on the bridge is connected with the mile of railroad bed extending from the west end of the bridge to Jones street, and the total length of track owned by appellee from Jones street to the east end of the bridge on the Illinois shore is shown to be about one and one-third miles in length. The Illinois Central railroad connects with the east end of the track of appellee on the Illinois shore and also with the tracks of appellee on the west end of its property at Jones street, in Dubuque, and the Illinois Central Railroad Company, under the lease of the appellee, operates and runs its trains across the entire property of appellee, and which trains all originate from Chicago, Illinois, and from Fort Dodge and Sioux City from the west. The railroad trains of other railroad companies, under a contract with the Illinois Central Railroad Company, use the property as aforesaid of the appellee for transporting their trains across the Mississippi river. The record shows that about thirty or forty trains or more per day cross the bridge of appellee. The record also shows that the total length of the bridge and track assessed by the tax commission as "railroad track" is 430 feet, and the record further shows that there has been a dispute for years between the bridge company and the taxing authorities in Illinois as to the exact point or points where the line between Illinois and Iowa crosses the track and bridge of appellee. So far as this record shows, this question has never been definitely settled by any court or otherwise except by occasional agreements between the disputing parties as to the length of the bridge to be assessed and taxed by the Illinois authorities for certain years, such agreements specially providing that the parties thereto were not to be bound by the agreement except as to the length of the bridge to be assessed and taxed for the years agreed on. It further ap-

pears that the length of the bridge assessed by the taxing authorities in Illinois has varied from 430 feet, the length of the bridge assessed in this assessment, to 880 feet in other years.   The question, however, of the length of the bridge to be assessed in this case or as to the amount that it should be assessed for, are not questions in this court, as the fifth objection raised by appellee to the taxes claimed by appellant was overruled by the court and is conceded by appellee to be correctly decided, which objection charged a fraudulent assessment by the board of review.

For the purpose of proving its objections and that appellee as a consolidated company is a railroad company owning a mile of railroad in Iowa and the entire bridge and railroad track thereon across the Mississippi river to its connection with the Illinois Central railroad, it introduced in evidence the following documentary evidence: First, certified copies of special acts of the legislature of Illinois by Secretary of State Emmerson, one approved February 14, 1857, and the other approved March 8, 1867, which provide as follows:

"That Samuel D. Lockwood, John A. Clark, of Freeport, and Edward H. Beebe, their associates, successors, heirs and assigns, be and the same are hereby created a body corporate, by the name of Dunleith and Dubuque Bridge Company, with power to build, maintain and use for railroad and other purposes, and as a public highway, a bridge over the Mississippi river, or that portion thereof within the jurisdiction of the State of Illinois, at or near Dunleith, in such manner as shall not materially obstruct or interfere with the free navigation of said river, and to connect such bridge, by railroad or otherwise, with any railroad or other public road, either in the State of Illinois or Iowa, terminating at or near said point, and to contract with any corporation or municipal authorities in either of said States for the construction and maintenance of said bridge, and to establish rules and regulations for the gov-

ernment, management and use thereof; to unite and consolidate its franchises and property with any and all bridge and railroad companies in either of said States; to fix the amount of capital stock; to divide, transfer and increase the same; to borrow money and pledge or mortgage its property and franchises; to condemn, according to law, property for the uses and purposes of said company; to contract, bargain and agree with any such railroad companies for aid in the construction and maintenance of such bridge, and to sell or lease the same, or the use thereof, or the franchises of said company, to any company or corporation: *Provided,* that the said company shall commence said bridge within two years and shall complete the same within ten years from the passage of this act." (Approved February 14, 1857.)

The act of March 8, 1867, is a short act, by the provisions of which the time for the commencement and completion of the said bridge is thereby extended for and during a period of ten years.

The next exhibit is a copy of the articles of incorporation of the Dunleith and Dubuque Bridge Company of Dubuque, Iowa, certified to by the Secretary of the State of Iowa, providing as follows:

"Platt Smith, H. L. Stout, William B. Allison and their associates and assigns, and all such persons as shall hereafter become stockholders in the company, are hereby incorporated under the name and style of the Dunleith and Dubuque Bridge Company, for the purpose of constructing, maintaining and operating a railroad from the Dubuque and Sioux City freight and passenger depots in the city of Dubuque, Iowa, to Dunleith, in the State of Illinois, including the building, maintaining and operating a railroad bridge across the Mississippi river.

"Said company shall have power to sue and be sued by their corporate name, to acquire, possess and dispose of real and personal property, to have a common seal, to construct,

maintain and operate a railroad between the Dubuque and
Sioux City freight and passenger depots in the city of Du-
buque, Iowa, and the town of Dunleith, in the State of Illi-
nois, including the building, operating and maintaining a
railroad bridge across the Mississippi river at the most con-
venient and accessible point, touching the west bank thereof
between Sixth and Seventh streets in said city, and to con-
nect said railroad by means of suitable tracks, side-tracks,
switches, etc., with any railroad now constructed or here-
after to be constructed terminating in the city of Dubuque
or opposite thereto, and to contract with any person or pri-
vate or public corporation for the construction, maintenance
and operation of said railroad or any part thereof, includ-
ing said bridge and connections herein provided for, and
to establish by-laws, rules and regulations for the govern-
ment, management and use thereof, including the right to
fix the rates of charges for the transportation of persons
and things over the same; to unite and consolidate their
franchises and property, real and personal, and capital
stock, with any and all railroad and bridge companies in
either of the said States of Illinois and Iowa; to borrow
money and pledge or mortgage their property and fran-
chises to secure the same; to condemn, according to law,
property for the uses and purposes of said company; to
build depots, station houses and other necessary buildings
for the convenient transaction of their business; to con-
tract, bargain and agree with any railroad company for
aid in the construction of such railroad and connections,
and to sell or lease the same or the use thereof, or the
franchises of said company, to any company or corporation.
Said company shall also have power to purchase and hold
the franchises and property and capital stock of the Dun-
leith and Dubuque Bridge Company, a corporation created
by the General Assembly of the State of Illinois, and shall
have such other and further powers as may be necessary
to carry out fully the purposes indicated in this article.

*   *   *   In case this company shall at any time consolidate with any bridge or railroad company in the State of Illinois, from and after the time of such consolidation the board of directors of such consolidated company shall be the directors of this company." (The secretary of the Dunleith and Dubuque Bridge Company also certifies that the foregoing is a true and correct copy of the articles of the incorporation, and the articles are marked filed in the office of the Secretary of State, September 7, 1867.)

The two corporations aforesaid of Illinois and Iowa were consolidated and united by an agreement entered into between them July 6, 1867, and a copy of the articles of consolidation certified to by the secretary of the consolidated company was also introduced in evidence, the provisions of which pertinent to this case are the following: "That the said corporations are hereby united and consolidated and from and after signing of these articles shall be merged into one body corporate under the name and style of the Dunleith and Dubuque Bridge Company, with right and authority to exercise all and every power conferred upon either or both of the corporations hereby united, to fully complete the object designed by said corporations; and the stocks of said two companies so united shall form one common stock, and the estate, real, personal and mixed, and the powers, rights, privileges, immunities and franchises belonging to each of the said corporations shall be and are hereby invested in said body corporate, and the debts, liabilities and obligations of each of the said corporations shall be deemed and are hereby declared to be the debts, liabilities and obligations of the said body corporate." These articles were sealed and signed by the presidents of both the Illinois and Iowa corporations and attested by the secretaries of the two corporations.

A validating act of 1907 of the State of Iowa, or copy thereof, certified to by the Secretary of said State, was also introduced. It recites an act of Congress was passed in

1866 authorizing the construction and maintenance of a bridge across the Mississippi river, the bridge aforesaid; the granting of the charter aforesaid by the legislature of Illinois to the Dunleith and Dubuque Bridge Company, by which charter the bridge company was given power to unite and consolidate its franchise and property with any and all bridge and railroad companies in Illinois or Iowa; that there was organized and created under the laws of Iowa the corporation known as the Dunleith and Dubuque Bridge Company for the purpose of constructing a railroad bridge across the Mississippi river, etc.; that section 1322 of the revision of 1860 of the laws of Iowa granted the power to railroad companies to join and unite their roads to and with a railroad in the adjoining State and to merge and consolidate the stock of such companies with other railroad companies and to thereby make one joint stock company of the railroad thus connected; that section 2036 of the code of Iowa of 1897 provides that a railroad corporation has power to join, intersect and unite and consolidate with any other corporation; that on July 7, 1867, the Dunleith and Dubuque Bridge Company, a corporation created by the laws of Illinois, executed articles of consolidation with the Dunleith and Dubuque Bridge Company, a corporation organized under the laws of Iowa; that the consolidated company thus formed has operated as a consolidated company and that the consolidation has been in force since July 6, 1867, and that all corporate powers of the two corporations have been assumed and exercised by the consolidated company under and by virtue of said articles of consolidation. The act then provides in the language following: "That the action of the said Dunleith and Dubuque Bridge Company, the corporation organized under the laws of the State of Iowa, in consolidating with the said Dunleith and Dubuque Bridge Company, the Illinois corporation, is hereby legalized and validated, and all franchises, powers and rights exercised by the said Dunleith and Du-

buque Bridge Company, the Iowa corporation, since the said consolidation on the 6th day of July, A. D. 1867, and all corporate proceedings, acts and contracts made with the said Dunleith and Dubuque Bridge Company, the Iowa corporation, since said consolidation on the said 6th day of July, A. D. 1867, and all contracts affecting the said consolidation or relating thereto, and all corporate acts done, rights or franchises acquired or exercised by said Iowa corporation, and all proceedings of the said Iowa corporation founded on said act of consolidation, or connected with or pertaining to the assumption by it of the rights, duties, powers or franchises attempted to be granted and adopted by it in the said consolidation of date July 6, 1867, are validated and confirmed as completely and fully as if there was an explicit and full legal authority from the State of Iowa at the time of consolidation, authorizing said consolidation."

The record further shows that the west end of the railroad track of appellee connects with the railroad and railroad track of the Dubuque and Sioux City Railroad Company and with the depot and the freight house of the latter company at said junction or connection, and that the Dubuque and Sioux City Railroad Company is now owned and operated by the Illinois Central Railroad Company; that appellee does not own any railroad stock or operate its railroad, but on November 13, 1867, entered into an agreement with the Illinois Central Railroad Company and the Dubuque and Sioux City Railroad Company; that in that contract appellee agreed to construct a bridge across the Mississippi river suitable for the transit of railroad trains and to be used for no other purpose, and to connect the westerly end of said bridge by a good and substantial railroad track with the track of the Dubuque and Sioux City Railroad Company; to provide and furnish to the Illinois Central Railroad Company lands at Dubuque sufficient and convenient to enable it to transact its freight and

passenger business in said city, and to prepare and maintain a proper and sufficient railroad track from such bridge to the said lands. In accordance with that agreement, which has been fulfilled, appellee has procured and owns a right of way for its railroad one hundred feet wide, and further agreed with the Illinois Central Railroad Company to maintain and keep in repair, in perpetuity, the said bridge and railroad track, so that trains might safely cross at all times except when it shall be necessary to have the draw open for the passage of boats, and except, also, when repairing necessarily interfered with such crossing, and it granted in perpetuity to the said railroad company the right to use its tracks and bridge for the purpose of passing its freight and passenger trains over said river and to use the land aforesaid for the transaction of its business in Dubuque. Appellee therefore does not operate its railroad and bridge, but the same is operated under the said agreement and lease by the Illinois Central Railroad Company and other railroad companies operating subject to agreement with the Illinois Central railroad, which is subject to the agreement of the latter with appellee.

The first objection of appellee to the taxes in question sets forth that the objector is a corporation existing by virtue of the consolidation of the Dunleith and Dubuque Bridge Company incorporated under the laws of Iowa and the Dunleith and Dubuque Bridge Company incorporated under the laws of Illinois; that it is a corporation having the powers, rights, duties and authority of a railroad corporation; that it is ready to show on the hearing of its objections that it should be and can only be taxed as such; that its property in the county of Jo Daviess is property owned by a corporation having the powers, rights, duties and authority of a railroad corporation and is property designated as "railroad track," which could only be assessed for taxation for the year 1923 by the State Tax Commission of Illinois and could not be assessed for tax-

ation by either the local assessor of the town of Dunleith, in Jo Daviess county, in which town its property is situated, or by the board of review of that county; that the taxes returned delinquent against its property were extended against the same on an assessment for taxation thereof pretended to be made by the board of review of said county and not on an assessment thereof made by the State Tax Commission, and that the taxes so extended were extended without right, power or authority and are void.

The second objection sets forth the same facts with more detail, describes the railroad of appellee as extending a distance of about 2.3 miles from Jones street, in Dubuque, to a point at or near the east end of the bridge, in Dunleith township, and also of a certain railroad bridge upon which said railroad tracks are located; that the State Tax Commission, pursuant to its duty, listed, valued and assessed to appellee all of its property, being railroad track, at the sum of $171,023, and reported the assessment, as required by law, to the clerk of said county for the purpose of extending taxes thereon; that the county clerk extended, as required by law, the required rate of taxation in said township for all municipal taxes; that appellee has paid all its taxes legally due on said assessment and has a receipt therefor in the sum of $8855.16; that the taxes returned delinquent against its property are pretended taxes extended upon the pretended assessment made by the county board of review and are void; that its property assessed is located in the county of Jo Daviess and in the city of Dubuque, in Iowa, and consists of a railroad extending a distance of about 2.3 miles, from Jones street, in the city of Dubuque, to a point at or near the east end of its railroad bridge, in Dunleith township, in Jo Daviess county, and also of a certain railroad bridge upon and over which its tracks are located, and that all of its said property in the said county of Jo Daviess, consisting of the Illinois portion of said bridge and the tracks thereon located, is such property

as is in the Revenue law of the State of Illinois designated as "railroad track," and that under section 42 of the act entitled "An act for the assessment of property and for the levy and collection of taxes," approved March 30, 1872, is classed as "railroad track," and is required to be so listed and valued for taxation under section 50 of the same act by the State Board of Equalization (now State Tax Commission) under sections 25, 26 and 27 of the same act as amended in 1919, etc.

By these two objections all the questions on this record are raised and it is not necessary to state the other objections of appellee.

The real question in this case is whether or not the property of appellee in question is assessable as "railroad track" or simply as a bridge spanning the Mississippi river at the point in question and between this State and Iowa. Stated in another way, the question is whether or not appellee is simply a bridge company owning only a bridge across the river, or is a bridge company owning a railroad and a bridge which are connected and operated as a railroad, as is claimed by appellee.

Section 40 of our Revenue act provides that every person, company or corporation owning, operating or constructing a railroad in this State shall return sworn lists or schedules of the taxable property of such railroad, "as hereinbefore provided." Section 42 of the same act defines "railroad track" as including the superstructures of main, side or second track and turn-outs and the station and improvements of the railroad company on such right of way, and provides that such property shall be held to be real estate for the purposes of taxation, and that it shall be denominated "railroad track" and shall be so listed and valued. Section 50 thereof provides, in substance, that the State Board of Equalization (now tax commission of Illinois) shall assess such property for taxation. (Hurd's Stat. 1921, chap. 120.) Paragraph 354 of the same chap-

ter provides that all bridge structures across any navigable streams forming the boundary line between the State of Illinois and any other State shall be assessed by the township or other assessor in the county or township where the same is located, as real estate, and that all provisions of law relating to the assessment and taxation of real estate shall apply to the assessment and taxation of such bridges.

This court in *Chicago and Alton Railroad Co.* v. *People,* 153 Ill. 409, held that the fact that the structure was a railroad bridge across the Mississippi river, and used exclusively as such, would not entitle its owner to have it assessed as railroad property unless that owner was a railroad company; and that railroad property, to be assessable by the State Board of Equalization as "railroad track," must not only be so used, but it must be the property of a railroad company. In the case of *People* v. *Keokuk and Hamilton Bridge Co.* 287 Ill. 246, the facts stated and found were that the property claimed by the bridge company was a railroad bridge across the Mississippi river between the cities of Hamilton, in this State, and Keokuk, Iowa, which was used by various railroad companies operating railroads extending eastward and westward from the bridge, and that the bridge company owned nothing but the railroad bridge. It was again held in that case that the railroad bridge was not assessable as "railroad track" and was properly assessed by the local assessor as a bridge under said paragraph 354, and for the reason that the railroad bridge was not a part of any railroad or railroad system owned by the bridge company. It was not said in either of those cases, as stated by appellant in its brief, that a railroad bridge across such a river must be shown to be part of a railroad or of a railroad system and owned and operated by its owner as a part of its railroad or railroad system. It is sufficient if such bridge is simply owned by a railroad company and is connected and operated with the railroad or railroad system of such company as a railroad. Such a

bridge and railroad or railroad system does not have to be operated by its owner to be so assessable.

In *Anderson* v. *Chicago, Burlington and Quincy Railroad Co.* 117 Ill. 26, and in *People* v. *Atchison, Topeka and Santa Fe Railway Co.* 206 id. 252, this court sustained the contention that the bridges in question were assessable as "railroad track," because it was in those cases shown that the bridges were owned by railroad companies and that the railroad bridges were connected with and operated as a part of their railroad. It also clearly appears from these two cases that it makes no difference how such railroad companies became the owners of the railroad bridges,— whether by purchase or otherwise,—and that if they are such owners and the bridges are connected with the railroads of such owners and operated as a part of their railroad system they are assessable as "railroad track." We will further add that the legislature of Illinois, had it seen fit to do so, might have provided that a railroad bridge used only for railroad purposes and crossing a stream between this State and another State should be assessed as "railroad track," but it did not do so. Bridge companies which simply own nothing but bridges are to be assessed as to such property by the local assessor. "Railroad track," as defined by the statute, is the main and side-tracks and turn-outs and the station and improvements of the railroad company on such right of way, and to be property of that character and assessable as railroad tracks it cannot include a bridge that is bridge property, only, not owned by a railroad company, even though in a general sense every such railroad bridge is a part of the general lines of all railroads with which it is connected and operated.

Appellee proved by the parol evidence of a witness who was familiar with its property in Illinois and in Iowa, that it owned about one mile of railroad or railroad tracks and side-tracks already described, which extend from the depot and freight house at Jones street, in Dubuque, Iowa, to the

322-8

west end of the bridge, and that its railroad tracks afore-said and side-tracks are connected with the tracks of the Illinois Central railroad at said depot and freight house and also with the tracks of the bridge at its west end, and that the tracks on the bridge extend to the east end of the bridge and connect with the tracks of the Illinois Central Railroad Company in Illinois. This witness further stated that the Dunleith and Dubuque Bridge Company owned the track and right of way from Jones street, in Dubuque, Iowa, to the east end of the bridge in Illinois, and that the said property of appellee was operated by the Illinois Central railroad and other railroads for railroad purposes in connection with their railroads. This proof was made without any objection whatever by appellant. Appellee also introduced in evidence a map showing the railroad tracks and side-tracks of appellee in Iowa and their said connections with the Illinois Central railroad and the length of their tracks and their connection with the bridge at both ends. There was no objection offered to this map except a general objection that it was immaterial as evidence.

To all of the documentary evidence aforesaid offered by appellee tending to prove that it was a railroad company and that it was a consolidated company possessing all the powers, franchises and privileges and rights and duties of the Dunleith and Dubuque Bridge Company incorporated under the laws of Iowa and of the Dunleith and Dubuque Bridge Company incorporated under the laws of Illinois, appellant offered no objection to the introduction thereof except a general objection as to their materiality and competency, which was made in this language: "We will not admit the materiality or competency of these exhibits, but we don't enter any objection to the form of the certificates nor to the method of introducing them." There was no specific objection made to any of such documents except as to appellee's exhibit 6, (the articles of consolidation of the Iowa corporation and the Illinois corporation,) and ex-

hibit 7, (the validating act of Iowa aforesaid,) the objection to the latter being that it was irrelevant and immaterial. The specific objection to exhibit 6 does not appear in the record except in the withdrawal of the objection by appellant, which withdrawal is in this language: "I withdraw the objection to the introduction I have made to exhibit 6 as regards the formality of the certificate. We will not require the objector to prove that the person making the certificate is the secretary of this corporation or the keeper of the records, but we do object to the introduction of this on the grounds that it is a certificate not connected or not being the corporation taxed, and that it is incompetent and irrelevant in this proceeding. I didn't mean by that that I am objecting to the form or method of proof; it is the exhibit."

We recognize the rule, under the provisions of our Revenue act, that appellant is not required to plead or file any formal pleadings in answer to an owner of property objecting to taxes, but we must also recognize the rule that appellant is bound by the ordinary rules of evidence, and when the objector is introducing evidence, documentary or otherwise, it can have no benefit of any objection thereto that is not made to the introduction of evidence, and that it waives specific objections not made or included in any general objection raised to the evidence. This record simply discloses that there was just one general question before the court, and that question is whether or not appellee proved its objections,—that is, whether or not the evidence sustains the objections made by appellee to the taxes in question.

The special act incorporating the Illinois corporation confers powers upon the incorporators "to build, maintain and use for railroad and other purposes as a public highway, a bridge over the Mississippi river,"—the bridge in question. It also conferred the power upon that corporation "to unite and consolidate its franchises and property

with any and all bridge and railroad companies" in either
Iowa or Illinois, "and to sell or lease the same or the use
thereof, or the franchises of said company, to any company
or corporation." It was given by that special charter ten
years to complete the bridge and was to begin building it
within two years, both of which times were extended ten
years by the other special act of Illinois. The articles of
incorporation of the Iowa corporation set forth that it is
incorporated under the same name as the Illinois corpora-
tion, and for the purpose of constructing, maintaining and
operating a railroad from the Dubuque and Sioux City
freight and passenger depot in the city of Dubuque to Dun-
leith, in Illinois, including the building, maintaining and
operating a railroad bridge across the Mississippi river, and
that it shall have such powers and privileges. These arti-
cles further set forth that the corporation shall have power
to unite and consolidate its franchises and property, real
and personal, with any and all railroad and bridge com-
panies in either of said States, and to sell or lease the same
or the use thereof, or the franchise of said company, to any
company or corporation. The evidence, as already stated,
shows that it did build its railroad and build the bridge and
that it has been operated as a railroad. The two corpora-
tions are of the character of corporations that might be
consolidated, and there is no question on that point. The
documentary evidence further shows that the two com-
panies signed articles of consolidation, and that they are
united and consolidated, with right and authority to exer-
cise all and every power conferred upon either of the cor-
porations united, etc.

The special act of Illinois is itself the charter of the
company incorporated thereby, and that special act gave the
corporation complete authority to consolidate with the Iowa
corporation. The sanction of the State to such a consoli-
dation may be expressed by authority given in a general
law, or it may be done by the special charters of the con-

solidated companies passed before consolidation, or by a subsequent legislative ratification of an unauthorized consolidation. (*American Trust Co.* v. *Minnesota and Northwestern Railroad Co.* 157 Ill. 641, citing authorities.) The validating act or ratifying act of Iowa introduced in evidence is therefore complete authority for the ratification or sanction by the State of Iowa to the consolidation of the two corporations aforesaid. One of the claims made by appellant is that there was no proof of the general law of Iowa, or other laws, conferring the right of consolidation and proving the charter powers of the corporation of Iowa. The validating act aforesaid is ample proof of the authority to consolidate and of all matters therein recited. It will be noted that that act recites that the Iowa corporation was created for the purposes aforesaid, and it recites the power and authority of the Illinois corporation to consolidate with the Iowa corporation; that the general laws of Iowa therein mentioned grant the powers to railroad companies to join and unite their roads to and with a railroad in the adjoining State and merge and consolidate with other railroad companies, and also to join, intersect and unite and consolidate with any other corporation. It also recites that the two companies executed articles of consolidation, and that the consolidated company thus formed and operated as a consolidated company has been in force since July 6, 1867, and that all corporate powers of the two corporations have been assumed and exercised by the consolidated company under and by virtue of the articles of consolidation. The act then proceeds to legalize and validate the consolidation of the two companies and every act performed by the consolidated company, and concludes that the said consolidation and the said acts of the said consolidated company are as completely and fully validated and confirmed as if there was an explicit and full legal authority from the State of Iowa at the time of the consolidation, authorizing such consolidation.

This court in many cases has recognized that the legislature can pass curative acts and thereby cure defects in the organization of corporations, and that such an act is a complete defense even to an action in the nature of *quo warranto*. The general rule is that the legislature may do by the curative act what it could have done in the first instance, and this rule has been announced several times by this court. The Supreme Court of Iowa in the case of *Windsor* v. *City of DesMoines,* 110 Iowa, 175, 81 N. W. 476, recognizes the same rule with reference to curative acts. In that decision it is stated: "A curative act may cure or legalize any act which the General Assembly could, as an original question, have authorized. And a large discretion is vested with the legislature in determining when such special laws should be passed."

By the consolidation of the Illinois and Iowa corporations aforesaid the original corporation of each State ceased to exist and the consolidated corporation became a new corporation and acquired and succeeded to all the faculties, property rights and franchises of its component parts and became subject to all the duties, obligations and conditions imposed upon them. The new corporation exists, by virtue of the act of consolidation, under the sanction and by the authority of both States, Iowa and Illinois, in which the constituent companies had been chartered. The original corporations of which the new corporation is made up ceased to exist as separate acting corporations. They do not necessarily cease to exist but they lie dormant, and their property, rights, powers and franchises are possessed and exercised by the new consolidated corporation. (*Ohio and Mississippi Railroad Co.* v. *People,* 123 Ill. 467; *Chicago Title and Trust Co.* v. *Zinser,* 264 id. 31; *People* v. *Louisville and Nashville Railroad Co.* 120 id. 48; *Chicago, Rock Island and Pacific Railroad Co.* v. *Moffitt,* 75 id. 524; *Racine and Mississippi Railroad Co.* v. *Farmers' Loan and Trust Co.* 49 id. 331; *Chicago Title and Trust Co.* v. *Dole,*

259 id. 489.) Hence the new consolidated company is a railroad company, or a company having the rights and franchises of a railroad company. The State of Iowa only has jurisdiction over the property or proceedings of the corporation within its own limits and Illinois has jurisdiction of it and of its property in Illinois, and its property in Illinois is assessable as railroad property or "railroad track." It is immaterial, in determining whether or not the consolidated company is a railroad company, how short or how long its railroad may be or under what name it exists, or that it has no rolling stock, or that it is operated by rolling stock other than its own. *State* v. *Superior Court of King County,* 54 Wash. 365, 103 Pac. 469; *Bridwell* v. *Gate City Terminal Co.* 127 Ga. 520, 56 S. E. 624; *National Docks and N. J. J. C. Railway Co.* v. *State,* 53 N. J. L. 217, 21 Atl. 570.

Appellant raises a number of objections to the proof of appellee or the introduction of the exhibits aforesaid which were not raised below, and most of them are unavailable because not raised in the lower court. Most of the objections have been answered by what we have said already. One of the objections in this court is that the articles of incorporation of the Iowa corporation shows that the life of the corporation was limited to April 8, 1917, and that it was not shown that its life was extended by any proof in the record. This objection would not have been available if raised below, as the corporation's existence was recognized by the validating act of Iowa, and only the State of Iowa had the right to question its existence. The claim of appellant that there was no authority in Illinois for the consolidation of the two companies, and that under the holding of this court in *American Trust Co.* v. *Minnesota and Northwestern Railroad Co. supra,* that the law authorizing such consolidation was repealed if it had been given, can not be sustained. The special act creating the Illinois corporation gave the right to consolidate, and such right was

not repealed by the laws of 1874. It is clear, also, that appellant misconstrues the record in its claim that the witness of appellee testified that appellee had no rolling stock and then further testified that it had rolling stock, setting forth such rolling stock. The rolling stock set forth was rolling stock of the company operating appellee's railroad and bridge. Appellant is also in error in its claim that appellee makes no claim that it owns the property against which judgment is sought for delinquent taxes and that the evidence in the record does not show that it owns the property. All other objections that are available to the appellant have already been answered.

The judgment of the lower court is affirmed.

*Judgment affirmed.*