JAMES O. ANDERSON

*v.*

THE CHICAGO, BURLINGTON AND QUINCY RAILROAD COMPANY.

*Filed at Ottawa May 15, 1886.*

1. TAXATION—*bridge for railroad purposes, to be assessed as "railroad track"—and by whom.* A bridge across a navigable stream forming the boundary between this and another State, constructed and used exclusively by a railroad company as a part of its continuous line of railroad, for the purposes of taxation, comes within the denomination of "railroad track," and as such is to be assessed only by the State Board of Equalization. Its assessment by the local assessor is without warrant of law, and taxes extended thereon may be enjoined.

2. SAME—*and herein, as to the meaning of the act of 1873 relating to the assessment of bridges.* The act of 1873, providing that "all bridge structures across any navigable stream forming the boundary line between the State of Illinois and any other State, shall be assessed by the township or other assessor in the county where the same is located, as real estate," was not intended to change the method of taxing railroad property or the mode of assessing it, but to apply to bridges not constituting a railroad track exclusively, and to make such structures real estate, for the purpose of collecting taxes thereon.

3. SAME—*whether railroad bridge built in excess of power not material.* On the question of the proper authority to assess for taxation a bridge built by a railroad company, the question whether the company exceeded its chartered powers in building the bridge is wholly immaterial.

4. STATUTES—*construction—looking beyond words to the intent.* A thing which is within the letter of a statute is not within the statute, unless it be within the intention of its makers. In determining the meaning of a statute, the courts are not confined to its words, but will regard its purpose, and consider it, in connection with other statutes, *in pari materia*, and in view of the condition existing.

APPEAL from the Circuit Court of Henderson county; the Hon. ARTHUR A. SMITH, Judge, presiding.

Messrs. KIRKPATRICK & ALEXANDER, and Mr. RAUS COOPER, for the appellant.

Mr. J. W. BLYTHE, Mr. THOMAS HEDGE, and Mr. W. L. COOPER, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

The bill in equity in this case was filed by the Chicago, Burlington and Quincy Railroad Company, against the collector of taxes of Henderson county, Illinois, to enjoin him from proceeding to collect, through judgment and sale, taxes assessed for the years from 1870 to 1884, both inclusive, upon the east half of a bridge over the Mississippi river, opposite Burlington, Iowa. The circuit court decreed the relief prayed, and the defendant appealed.

The single question is, had the assessor of Henderson county, Illinois, in which the east end of the bridge is located, the right to assess the one-half of the bridge, or was it assessable only by the State Board of Equalization as part of the main track of the railroad of complainant.

It appears that in 1867–8 the Chicago, Burlington and Quincy Railroad Company erected, with its own money, the structure in question, known as the "Burlington bridge," across the Mississippi river, from a point in Henderson county, Illinois, to a point in Burlington, Iowa, and was then, and has been ever since, the sole owner thereof, and that the bridge is used exclusively as a railroad track, the total length of the bridge being two thousand two hundred and thirty-seven feet; that the railroad company had in each year, from the erection of the bridge, reported one thousand one hundred and nineteen feet (or the part thereof within the boundary of Illinois) as part of its main track, and the same had been duly assessed and taxes paid thereon as main track, and that the county of Henderson had annually received its due proportion thereof.

In relation to taxation of the realty of railroads, the general Revenue law of 1872 (Rev. Stat. 1874, chap. 120, sec. 42,) provides: "Such right of way, including the super-

structures of main, side or second track and turn-outs, and the station and improvements of the railroad company on such right of way, shall be held to be real estate for the purposes of taxation, and denominated 'railroad track,' and shall be so listed and valued." By section 43, the value of the "railroad track" shall be listed and taxed in the several counties, towns, villages, districts and cities, in the proportion that the length of the main track in such county, town, village, district or city bears to the whole length of the road in this State, except the value of the side or second track, and all turn-outs, and all station houses, depots, machine shops or other buildings belonging to the road, which shall be taxed in the county, town, village, district or city in which the same are located. The provision of section 109 is, that the State Board of Equalization shall assess the railroad property denominated in the act as "railroad track."

The bridge in question was constructed and used by the railroad company as a part of its continuous line of railroad, and we can have no doubt that under the general Revenue law it comes within the denomination of "railroad track," and is to be assessed by the State Board of Equalization.

But though this might have been the case until 1873, it is contended that since the passage of the act approved May 1, 1873, (Laws 1873, p. 37,) the right to assess has been in the local assessor. That act provides, "that all bridge structures across any navigable streams forming the boundary line between the State of Illinois and any other State, shall be assessed by the township or other assessor in the county or township where the same is located, as real estate."

Stress is laid upon the word "all,"—"all bridge structures;" that this must include the bridge in question; that it is not allowable to interpret what has no need of interpretation. It must be admitted that this bridge comes within the letter of the statute, but it is not within its meaning. A thing which is within the letter of a statute is not within the statute,

unless it be within the intention of the makers.    4 Bacon's Abr. Stat. p. 468, (45.)    In determining the meaning of a statute, we are not confined to its words, but may regard its purpose,—consider it, in connection with other statutes, *in pari materia,* and in view of the condition existing.    It appears in the case, that there were, in 1873, eight bridges spanning the Mississippi river, all of which, except the one in question and that at Rock Island, were erected by bridge companies, and have ever since been respectively the property of such bridge companies, and not the property of any railroad company.    Such bridges of bridge companies had been regarded as personal property, and as not liable to be sold for delinquent taxes so as to convey a good title thereto, and to meet a necessity in that respect the statute was passed, and for no other purpose.    The act was before this court for consideration in *Quincy Bridge Co.* v. *Adams County,* 88 Ill. 620, where we placed this construction upon it.    We then said of it:    "The act applies solely to bridge structures, and capital stock is not mentioned in it.    The sole object, as appears from its various clauses, especially the emergency clause, was to declare such structures real estate, they having before that time been regarded as personal property. * * *    The emergency clause in the act of 1873 conclusively determines the purpose for which the act was passed. 'Whereas, by existing laws, such bridge structures can not be sold for delinquent taxes so as to convey a good title thereto, therefore an emergency,' " etc.    It was not the purpose of the act to change the method of taxing railroad property, or the mode of assessing it.    It was of the system of taxation of railroad property, to distribute the tax upon the main track of railroad among all the counties in the State through which the road runs, by a certain rule of proportion. The assessment or taxation of railroad property as such, was not in the mind of the legislature, and there being no intention to make any change in the system of the taxation of railroad

property, we must hold that no change therein, as to the mode of assessment and taxation of the main track of railroad, was effected by the act,—that broad as are its terms, all bridge structures, it did not include the bridge in question, it being railroad track. As such, it was alone assessable by the State Board of Equalization, and the assessment of it by the local assessor was without warrant of law.

Attempt was made to show that the company had exercised powers not granted to it in building the bridge, in fixing the terminus of its road on the Mississippi river, and in changing the location of the road after having once exercised the power to locate,—all which was without pertinence in this collateral proceeding. The bridge had been built, and was, in fact, a part of the main track of the railroad. It was assessed and taxed as railroad property, and that there may have been the exceeding of chartered powers in the building, is immaterial upon this inquiry of which was the proper authority to assess the bridge.

The decree must be affirmed.

*Decree affirmed.*