(No. 25188.—

THE ST. LOUIS BRIDGE COMPANY *et al.* Appellees, *vs.* OSCAR
L. BECKER, County Clerk, Appellant.

*Opinion filed October 10, 1939.*

LOUIS P. ZERWECK, State's Attorney, and KEVIN KANE,
(JOHN J. DRISCOLL, of counsel,) for appellant.

KRAMER, CAMPBELL, COSTELLO & WIECHERT, (THOMAS
M. PIERCE, and WALTER N. DAVIS, of counsel,) for ap-
pellees.

Mr. Justice Stone delivered the opinion of the court:

Appellees, the Terminal Railroad Association of St. Louis and the St. Louis Bridge Company, hereinafter referred to as the Terminal and the Bridge company, filed a bill of complaint in the circuit court of St. Clair county seeking an injunction restraining the county clerk of that county from extending a tax based on an assessment made by the board of review of that county against property known as the Eads Bridge. Defendant filed a motion to dismiss the complaint, which was overruled, and defendant abiding his motion, a decree was entered perpetually enjoining him, as county clerk, as prayed in the bill.

The facts, as shown by the bill of complaint and admitted by the motion to dismiss, are that the bridge, known as the Eads Bridge, extends from East St. Louis across the Mississippi river to St. Louis. It consists of two decks, the lower one carrying railroad tracks and on the superstructure is constructed a highway for vehicles and pedestrians. That part of this entire structure located in Illinois was assessed by the board of review and also by the State Tax Commission, the latter assessment being under an act "For the assessment of the property of railroad companies," etc., approved July 8, 1937. (Ill. Rev. Stat. 1937, chap. 120, par. 56.1 *et seq.* p. 2627.) The assessment by the local assessing officials of St. Clair county was made under an act "To provide for the assessment and taxation of bridges across navigable waters on the borders of this State," approved May 1, 1873. Ill. Rev. Stat. 1937, chap. 120, par. 366, p. 2700.

The bridge was built by the appellee Bridge company, which was incorporated in 1878 for a period of five hundred years, unless its charter be renewed. The bridge is of steel, stone and wood construction. Near the Missouri shore the railroad deck enters a tunnel under the city of St. Louis, owned by the Tunnel Railroad and leased to the appellee Terminal. On the Illinois side the railroad struc-

ture extends to the Illinois bank of the Mississippi and beyond into the city of East St. Louis where it joins other tracks owned by the Terminal. The vehicular and pedestrian highway laid across the superstructure of the bridge joins and is level with Washington avenue in the city of St. Louis on the west side. On the Illinois side, approaches are constructed on each side of the railroad extending down to the level of the streets of the city of East St. Louis.

On July 1, 1881, the bridge was leased to two railroads, together with all right, title and interest to the property in and to the bridge and the approaches on either side, together with all railroad tracks, lands, buildings, fixtures and other property. This lease was afterwards, by written agreement entered into on October 3, 1889, assigned to the Terminal. The capital structure of the Bridge company consists of common stock, which is placed in trust with the Mercantile Trust Company of New York, to which is given power and the duty, so long as the lessee performs its obligations under the lease, to vote the stock as directed by the lessee, now the Terminal, in any manner not inconsistent with the provisions of the lease. The lease also contains the following provision: "The said common stock, subject to the above restriction as to the custody and control thereof, shall go and belong to the said lessee companies. All expenses of the trust hereinabove provided for shall be borne by said lessee companies." There are also outstanding, as a part of the capital structure of the Bridge company, first and second preferred stock, sold to and owned by divers individuals, and first mortgage bonds all owned by the Terminal.

Under the lease assigned to the Terminal the bridge is leased for the life of the Bridge company, or as it may be extended. By the terms of the lease the Terminal is required to: (a) Keep the bridge in repair; (b) pay all taxes assessed against the property; pay the sum of $2500, or any required additional amount, per year, to maintain the corporate organization of the Bridge company, and

pay the interest on all bonded indebtedness and the fixed dividends on all preferred stock. This amounts to ownership of the bridge in the Terminal, so far as taxing questions are concerned.

The question involved in the case is whether, for the year 1938, that portion of the Eads Bridge in Illinois was assessable by the State Tax Commission under the Railroad act of 1937, or by the local assessing authorities of St. Clair county under the statute of 1873. Both bodies assessed all of the bridge located in Illinois and appellee seeks, by injunction, to restrain the county clerk from extending the assessment made by the board of review, contending that the bridge, so far as located in Illinois, was assessable only by the Illinois State Tax Commission.

The act of 1873 provides that "All bridge structures across any navigable streams forming the boundary line between the State of Illinois, and any other State, shall be assessed by the township or other assessor in the county or township where the same is located as real estate;" etc.

The act of 1937, by section 2, provides: "The Tax Commission shall assess all property owned or used by railroad companies operating within this State, as of April first annually, except property found by the commission to be non-carrier real estate as hereinbefore defined," etc. Under section 3 of the act every railroad company shall, in the month of April of the year 1938 and at the same time in each year thereafter, file with the State Tax Commission a statement or schedule showing property held for right-of-way, whether owned, leased or operated under trackage right agreement, improvements and stations located on its right-of-way, and shall report all non-operating personalty owned or controlled by such railroad company, describing same. By section 5, railroad companies are required to return to the State Tax Commission a list of their "non-carrier real estate," describing it, and the State Tax Commission shall examine such list and make whatever additions

or alterations it may find necessary, and transmit to the proper assessing officials of each county in which such non-carrier real estate is located, the list of such real estate as found by it, and "the proper assessing officials of each county shall thereupon assess such non-carrier real estate in the same manner as other similar property belonging to individuals, except that it shall be treated as property belonging to railroads, under the terms 'land' and 'lots'," etc. Section 2 of the act prescribes the method by which the commission shall determine the fair cash value of the property assessed by it and requires that the assessment by the commission shall include "capital stock and all other property of railroad companies except such property as is found by the commission to be non-carrier real estate as hereinbefore defined."

Appellant says, first, that an action in equity will not lie for the reason that appellees have not exhausted their legal remedy as required in cases of tax objection, and cases in this court are cited in support of this contention. This is not such a case. It is not an objection to the method or amount of the tax but presents the claim that the board of review was without power to assess and that the county clerk was about to spread a void assessment upon the books. It may readily be seen that if appellees were to wait until sale for delinquent taxes was sought, a deposit as required by statute would have to be made for the loss of use of which appellees could not be recompensed. It is further seen that to extend both of these assessments would not only entail great additional labor but much confusion in the matter of extending taxes. It is a proper case for equitable jurisdiction.

Appellant also says that there is no repeal by implication of the act of 1873 relating to boundary bridges because there is no repugnance between it and the act of 1937, for the reason that the act of 1873 applies to all bridges crossing boundary line streams, while the act of 1937 was passed merely to make more definite the provisions of the law as it

formerly existed regarding taxation of railroad property. It was held in *Anderson* v. *Chicago, Burlington and Quincy Railroad Co.* 117 Ill. 26, that boundary line bridges owned and operated by railroad companies should be assessed by the State Tax Commission under the act of 1873 and that all other boundary line bridges should be assessed by county authorities. It is not contended, and cannot be, that the act of 1937 repealed, *in toto,* the Bridge Assessment act of 1873, for it is clear that the latter act still governs the assessment of privately owned boundary highway bridges, and until the act of 1937 was passed, governed the assessment of railroad bridges, to the extent defined in the *Anderson case* just cited. See, also, *People* v. *Dunleith and Dubuque Bridge Co.* 322 Ill. 99. It was also held in *People* v. *Keokuk and Hamilton Bridge Co.* 287 Ill. 246, that a bridge built and leased by a bridge company to several railroads, was to be assessed by local assessing authorities and not as railroad property, for the reason that it was owned by a bridge corporation and not the railroad. In *People* v. *Atchison, Topeka and Santa Fe Railway Co.* 225 Ill. 593, a boundary line bridge owned by the railroad company and used primarily for railroad purposes, was held assessable by the State Tax Commission as railroad property under the act of 1873. Such was the state of the law at the time of the adoption of the act of 1937.

To determine whether there is a repugnance between the act of 1873 and that of 1937, and so whether there has been a repeal of portions of the former act by implication, it is necessary to consider the provisions of the later act. Section 2, as we have seen, provides that the State Tax Commission "shall assess all property owned or used by railroad companies operating within this State, as of April first annually, except property found by the commission to be non-carrier real estate as hereinbefore defined." Non-carrier real estate is, by paragraph 5 of section 1, defined to be lands and improvements thereon "not situated on the right-of-way of said railroad and not used as operating

property within the meaning of the definition set out above in paragraph (3). Improvements owned by others and situated on the right-of-way not used in the operations of said railway shall be deemed to be 'non-carrier real estate.' The commission shall adopt such rules and regulations as shall be proper to determine whether any property is 'non-carrier real estate'."

By the averments in the bill of complaint, admitted by the motion to dismiss, the entire Eads Bridge, including the vehicular roadway, is situated on appellee's right-of-way. While the vehicular roadway is not used in operating the railroad, it is not "improvements owned by others," since, by the admission of the motion to dismiss, the Terminal, through its lease and ownership of the common stock, must be held to be, in effect, the owner of the entire structure for taxing purposes. Thus, there is no portion of the bridge which comes within the definition of non-carrier real estate.

By section 5 of the act the railroad is required to list non-carrier real estate with the State Tax Commission, which shall find and certify such list to the local taxing officials. It is thus seen that the State Tax Commission is to determine what constitutes non-carrier real estate. It is also true that all revenues, including those arising from vehicular traffic, are included by the Interstate Commerce Commission in operating revenues of the appellee railroad.

Appellant argues that the phrase "in this State," as used in section 2, hereinabove quoted, refers only to a railroad bridge wholly within the State. It will be seen, however, first, that the language refers to railroad companies operating within the State and not to a bridge which is wholly within the State. The phrase is used in paragraph 2 of section 1 of the act of 1937 in defining the term "railroad company" and not in defining property. Since, under the act of 1873, property in a border railroad bridge owned by others than the railroad using it was to be assessed by local authorities, while under the act of 1937 the State Tax Commission shall assess all property owned or used by rail-

road companies, except non-carrier real estate to be determined by the State Tax Commission, it is clear that there is a repugnance between the 1873 and 1937 acts.

It is also clear from former decisions of this court, that local assessing authorities are without power to assess the upper deck of this bridge, used for vehicular traffic, either as a wagon bridge under the act of 1873, or as a separate portion of a railroad bridge. In *People* v. *Atchison, Topeka and Santa Fe Railway Co. supra,* this court held, under the 1873 act, that a bridge which was used by a railroad company for railroad purposes, and a part of which was devoted to vehicular traffic, was nevertheless to be considered one indivisible structure; and as the vehicular roadway use was but incidental to the main use, the entire bridge was properly taxable by the State Tax Commission as railroad track. Such a construction should be applied here. The principal use of the Eads Bridge is for railroad purposes and the use for vehicular traffic is but incidental thereto. The bridge is indivisible for taxing purposes and the vehicular and pedestrian way should be taxed as a part of the railroad bridge by the State Tax Commission. It is clear, therefore, that there is in the Eads Bridge no non-carrier real estate as defined in the act of 1937. It follows, under that act, that there is given to the local taxing authorities no power to assess any portion of the bridge.

As we have seen, the local authorities have only the power to assess property certified to them by the State Tax Commission as non-carrier real estate. This is also repugnant to the act of 1873.

When the State Tax Commission in this case decided that no part of the Eads Bridge consisted of non-carrier real estate, the taxing authorities of St. Clair county were without authority to make any assessment of it. They protested the decision of the commission and a hearing was had on their protest. The commission, however, adhered to its original decision. A second hearing was asked and had, with the same result. No appeal from the decision

was taken, and no attempt was made to compel a certificate of the property as non-carrier real estate or to force the commission to recede from its conclusion that the entire bridge was assessable by the commission.

An examination of the cases cited by appellant shows that in all of them the act of 1873 has been applied only to boundary line bridges of bridge companies and in none of them has it been applied to such bridges owned and used by railroad companies.

Appellant says that if the act of 1937 is to be construed as repugnant to the act of 1873, it contravenes section 13 of article 4 of the constitution in that it amends the latter act without setting forth in full in the new act, the sections amended. This contention cannot be sustained. The act of 1937 is a complete and separate act, covering, to the exclusion of all other acts, the assessment of railroad property of the character here involved. This being so, it amends, modifies or repeals existing statutes inconsistent with its terms and does not contravene section 13 of article 4. It will be observed that section 2 of the act, as herein quoted, provides that the State Tax Commission shall assess all property owned or used by railroad companies operating within this State. The rule, often announced by this court, is that if an act is complete in itself, without reference to the general act, it does not contravene the provisions of section 13 of article 4 of the constitution merely because it repeals, modifies or amends, by implication, the general act. *People* v. *Ladwig,* 365 Ill. 574; *Bishop* v. *Chicago Railways Co.* 303 id. 273; *Hollingsworth* v. *Chicago and Carterville Coal Co.* 243 id. 98.

We are of the opinion that the board of review of St. Clair county was without power or authority to assess the property involved here, and the circuit court of that county was correct in so holding.

The decree of the circuit court is, therefore, affirmed.

*Decree affirmed.*