Albert F. Brown, Sidney Friedman and Harold Ginsburg, Copartners, Trading as Land Fill Associates, Appellees, v. City of Chicago, and Timothy J. O'Connor, Individually and as Commissioner of Police of City of Chicago, Appellants.

Gen. No. 46,212.

Opinion filed October 28, 1953. Released for publication November 18, 1953.

JOHN J. MORTIMER, Corporation Counsel of City of Chicago, for appellants; L. LOUIS KARTON, Head of Appeals and Review Division, and HARRY H. POLLACK, Assistant Corporation Counsel, both of Chicago, of counsel.

HAROLD GINSBURG, and SIMON HERR, both of Chicago, for appellees.

MR. JUSTICE KILEY delivered the opinion of the court.

This is an appeal by defendants from an interlocutory order restraining defendants from interfering with the filling of a slip on the west side of the Calumet River in Chicago, Illinois.

The complaint in Count I, seeks a permanent injunction and in Count II, at law, seeks $200,000 damages. The allegations in the counts are identical.

Exhibits attached to the complaint disclose that September 8, 1952 the Department of Public Works

and Buildings, Division of Waterways of the State of Illinois granted a permit to the C. & W. I. RR. Co. and Rail To Water Transfer Corp. to fill Slip #1 on the west side of the Calumet River; to widen the River Channel by establishing a new channel west of the then-existing channel line; to re-establish a new dock line; and to construct a new dock face. These permittees engaged plaintiffs to fill the slip. January 23, 1953 the Commissioner of Buildings, City of Chicago wrote plaintiff Friedman that the City was "willing to state" it had no objection to the filling of the slip pursuant to the State Permit after all conditions in the permit were met. In June of 1953 Chicago police officers stationed at the slip arrested drivers of vehicles carrying fill, for violation of section 99–36 of the Chicago Municipal Code.

Plaintiffs demanded that defendants cease and desist "illegal interference with the activities" of plaintiffs and persons dumping fill, under their orders, in the slip. The defendants did not desist, and this suit followed resulting in the temporary injunction.

Defendants contend the injunctional order should be reversed because: (a) equity has no jurisdiction to restrain police officers from enforcing the law; and (b) the chancellor erred in ordering the injunction without hearing evidence upon the relevant issues raised by the answer.

There is no merit in the first contention. The cases relied upon by appellants do not support the contention as applied to the facts in this case. We shall demonstrate this conclusion after disposing of the question whether the injunctional order was improvidently issued.

Section 36 of chapter 99 (Nuisances) of the Municipal Code of the City of Chicago prohibits, without

written permit of the Commissioner of Buildings, dumping of garbage, among other materials, anywhere within the City except at places authorized by that permit. Should the dumping be on private property, written consent of the owner must be filed with, and a permit obtained from, the Commissioner. Dumping without a permit is declared a nuisance.

Should an application be made under section 36, the Commissioner is required to notify the alderman of the ward in which the property is located, and the permit is not to be issued for ten days thereafter unless a regular City Council meeting is held within ten days, in which case, the permit is not to issue until the day following the meeting. Should no action be taken by the Council the Commissioner may issue the permit, provided the dumping will not constitute a nuisance, and the applicant file a bond conditioned on compliance with the City Code and rules and regulations of the Commission with respect to dumping.

Section 36.1 requires that the Commissioner, before issuing a dumping permit, certify by affidavit that he notified the alderman of the permit and that no action was taken by the City Council with respect to the application. Section 74 provides for a fine of not more than $200 for each violation, and that each day's continued violation shall be a separate and distinct offense.

The substance of the Commissioner's letter to Friedman was that the Commissioner had jurisdiction over dumping on private property, but had been advised he had no jurisdiction over dumping on private water slips, but that, since the State had issued a permit to fill the slip, the Commissioner had no objection to plaintiffs' doing so, provided they complied with the conditions of the State Permit. This letter was attached to the complaint as an exhibit.

The chancellor at the hearing had before him the pleadings, including the exhibits, and the arguments for and against the injunction. From both sources he was entitled to find that plaintiffs applied for a permit, filed the written consent of the owner of the slip, and received the letter of the Commissioner referred to; that thereafter plaintiffs began to fill the slip and continued doing so for approximately six months; that they invested a substantial sum of money in the enterprise and had made contracts imposing obligations to acquire and dump fill and promising substantial profits; and that during that time there were no complaints to them or the City and no interference with their operation. All of this was under authority of the State and express sufferance of the city official whose function it was to grant—in the absence of City Council objection—or deny permission.

The chancellor implicitly found that under these circumstances there was no violation by plaintiffs of section 36. We think he found correctly. It appeared that plaintiffs applied for a permit as required by section 36 and received the letter from the Commissioner authorizing the dumping. Plaintiffs were not required to show that the Commissioner had done what the ordinance required him to do before giving authority. Under the authority given, plaintiffs operated without complaint or interference for about six months, and made substantial investments and incurred substantial obligations promising substantial profits. It would be inequitable under these circumstances to decide that plaintiffs had not permission. On this point we think what we said in *Deer Park Civic Ass'n v. Chicago,* 347 Ill. App. 346 about the ripening of permit privilege into vested right is pertinent.

We need not attempt to break the circuit made by defendants' argument that even if the Commissioner's

letter be considered a permit, it was conditioned on plaintiffs' complying with section 36 by getting a permit from the Commissioner.

The cases cited by defendants upon the jurisdictional question support plaintiffs upon the facts here. There is no dispute between the parties on the general rules. Equity will not intervene to restrain enforcement of criminal law or to interfere with per-formance of duties by government department heads, *Jackie Cab Co. v. Chicago Park District,* 366 Ill. 474, unless officers are acting wholly outside their authority, *Kent v. Chicago,* 301 Ill. App. 312, or unless there are civil or property rights directly involved. *Chicago v. Chicago City Ry. Co.,* 222 Ill. 560; *Earhart v. Young,* 174 Tenn. 198, 124 S. W. (2d) 693.

In the instant case the defendants had no duty to arrest plaintiffs, but on the contrary, were acting wholly outside of their authority by their interference with the permit. Plaintiffs had, under this permit, substantial property rights which needed protection. Defense against the charge made by the police would not afford adequate protection to plaintiffs because their property rights were being destroyed by the interference of the arrests. *Chicago v. Chicago City Ry. Co.,* 222 Ill. 560, 574.

We think the chancellor had jurisdiction because the arrests affected directly substantial property rights which needed protection. High on *Injunctions* (3rd ed.) chap. II, § 68.

When the injunctional order was entered, defendants' answer was on file. There was no relevant issue of fact raised by the answer. The answer denied that plaintiffs' operation had been examined by the City Sanitation Inspector and no complaints were re-ported. At the hearing defendants argued that gar-

372

bage was being dumped in the slip. Defendants' only offer of proof under their answer was that garbage was being dumped. The chancellor knew that this was irrelevant if plaintiff had a permit. Section 36, chapter 99, Municipal Code of the City of Chicago.

Nevertheless in the interest of public safety, the chancellor offered the opportunity to defendants to submit proof of the findings of the Sanitation Department. The proof was not submitted. The chancellor indicated that should an abuse of the permit be shown, the injunctional order would be vacated.

█ We conclude that there was no abuse of discretion in granting the injunction. The order is accordingly affirmed.

*Order affirmed.*

FEINBERG, P. J. and LEWE, J., concur.