SOO LINE RAILROAD COMPANY, Plaintiff-Appellee, v. THOMAS C. HYNES, Cook County Assessor, *et al.*, Defendants-Appellants (Raymond T. Wagner, Jr., Director, Department of Revenue, Defendant-Appellee).

First District (2nd Division)   No. 1—92—3514

Opinion filed August 16, 1994.—Modified on denial of rehearing January 31, 1995.

Jack O'Malley, State's Attorney, of Chicago (Karen A. Covy, Mary T. Nicolau, Kathleen M. McGury, and Dean M. Victor, Assistant State's Attorneys, of counsel), for appellant.

Gorham, Metge, Bowman & Hourigan, of Chicago (Frederick A. Rausch, of counsel), for appellee Soo Line Railroad Company.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, and Jan E. Hughes, Assistant Attorney General, of counsel), for appellee Raymond T. Wagner, Jr.

PRESIDING JUSTICE SCARIANO delivered the opinion of the court:

Plaintiff Soo Line Railroad Co. filed a complaint in circuit court,

seeking to enjoin defendant Cook County Assessor Thomas C. Hynes from assessing certain real estate it owned in Cook County, maintaining that it was subject to being assessed only by the State Department of Revenue (Department). It joined other county officials as defendants in order to prevent them from levying and collecting the taxes which it argued would be the unlawful result of illegal assessments.

■ It grounded its alleged entitlement to injunctive relief in what were then sections 79 through 90 of the Revenue Act of 1939 (Act), which were repealed and reenacted as sections 11—70 through 11—125 of the Property Tax Code (Ill. Rev. Stat. 1987, ch. 120, pars. 560 through 571 (now codified, as amended, at 35 ILCS 200/11—70 through 11—125 (West Supp. 1993))), and which govern the assessment of the property owned or controlled by a railroad company. Under the Act, any realty which qualifies as "operating property" is to be assessed by the Illinois Department of Revenue, which in turn distributes the equalized assessed value of the taxable property of every railroad to the respective taxing districts entitled to it "in the proportion that the length of all the track owned or used in such taxing district bears to the whole length of all the track owned or used" in Illinois, except for buildings having an original cost exceeding $1000. Ill. Rev. Stat. 1987, ch. 120, pars. 560(2), 567 (now codified, as amended, at 35 ILCS 200/11—70(b), 11—110 (West Supp. 1993)).

The Act distinguishes between "operating property," which is to be assessed by the State, and "non-carrier real estate," which is simply realty owned by a railroad but which is not used for the purpose of operating a train, nor held by it for such a use in the future; noncarrier realty is to be locally assessed. (Ill. Rev. Stat. 1987, ch. 120, pars. 560(2), (4) (now codified, as amended, at 35 ILCS 200/11—70(b), (d) (West Supp. 1993)).) The Act obligates the railroad to provide to the Department each year a schedule of all of the realty it holds for right-of-way, either owned or leased, the size of the parcels, any improvements made thereupon, and its original purchase price. (Ill. Rev. Stat. 1987, ch. 120, par. 562 (now codified, as amended, at 35 ILCS 200/11—85 (West Supp. 1993)).) The railroad must also provide the Department with a list of all of its noncarrier real estate, including therewith its current assessed value, as well as its estimated true value, and this information is required to be forwarded by the Department to the assessing official in the county where the realty is situated in order that the noncarrier realty may be assessed "in the manner as similar locally assessed property belonging to individuals." Ill. Rev. Stat. 1987, ch. 120, par. 564 (now codified, as amended, at 35 ILCS 200/11—95 (West Supp. 1993)).

In order to facilitate the goals of the Act, it authorizes the Department to promulgate rules and regulations, which have the same force and effect as the statute so long as they are not inconsistent with it. (Ill. Rev. Stat. 1987, ch. 120, par. 571 (now codified, as amended, at 35 ILCS 200/11—125 (West Supp. 1993)).) Pursuant to this authority, the Department adopted the regulations contained in sections 110.105 and 110.145 of title 86 of the Illinois Administrative Code. (86 Ill. Adm. Code §§ 110.105, 110.145 (1986).) Section 110.105 provides that once the railroad submits its annual schedule of non-carrier property to the Department, that agency will transmit copies of the forms to the clerk of the county in which the property is situated. The regulation then directs the clerk to send the forms to his or her county's assessing official.[1] That officer is granted 30 days from the date of transmittal by the Department to verify that the list contains all of the railroad-owned realty in the county which qualifies as "non-carrier real estate," and if it does not, to register with the Department within the same 30-day period his or her objections with respect to the mischaracterization of the disputed properties. Section 110.145 sets forth the procedure by which the Department is to determine whether the railroad has properly identified its real estate either as State-assessed operating property or locally assessed noncarrier real estate.

Prior to 1987, the assessor's office in Cook County had never challenged a railroad's characterization of its owned or controlled property. In 1987, however, because his office grew concerned with a loss of potential revenue for the county, the assessor created a "Railroad

---

[1]We note that the insertion of the clerk into this regulatory scheme does not conform with the law. The Property Tax Code itself expressly provides that the Department is to transmit the listing of nonoperating property directly to the "proper assessing officials of each county in which non-carrier real estate be located." (Ill. Rev. Stat. 1987, ch. 120, par. 564, now codified, as amended, at 35 ILCS 200/11—95 (West Supp. 1993).) County clerks are not assessing officials in any sense of the term; they are involved only in the levying process. County collectors are just what the title implies—they collect the property tax. Since the regulation is inconsistent with the statute, it has no force or effect under the very terms of the Act. (Ill. Rev. Stat. 1987, ch. 120, par. 571, now codified, as amended, at 35 ILCS 200/11—125 (West Supp. 1993).) We make this observation parenthetically only, however, because defendants did not raise the issue here or in the circuit court. In any event, they do not persuade that but for this unenforceable addition of the clerk they would have filed the objections within the 30-day limit prescribed by the department; thus, they have waived the point. See 134 Ill. 2d R. 341(e)(7).

Task Force" to scrutinize more closely the railroad companies' classification of the realty they owned or controlled in Cook County. The task force was responsible for ensuring that the property which railroads had described as operating property in their submitted schedules to the Department did not actually fall within the category of noncarrier real estate. It attempted to coordinate its efforts with the Department in order to establish a double layer of auditing the schedules, thereby securing the accurate taxation of all railroad property situated in Cook County.

In late August or early September 1987, Paul Wiley, the deputy director of the Department's Property Tax Administration Bureau, held discussions with Cook County's first assistant assessor and the general counsel to the assessor. At this meeting, these officials informed Wiley that the assessor planned to object to the characterization of many Cook County-situated parcels which the railroads had described as operating property, but they were not confident that their office could comply with the 30-day deadline provided in section 110.145 of the Department's administrative regulations. (86 Ill. Adm. Code § 110.145 (1986).) Wiley instructed them to file their objections, even if belated, and gave assurances that the Department would not enforce the deadline; he further advised that the assessor could proceed to have his office assess the disputed parcels even before his objections could be ruled on by the Department.

As provided in its regulations, the Department transmitted to the clerk of Cook County the railroads' listings of noncarrier property in the county, but it did so in two batches. The first was sent on August 7, 1987, under cover of a memorandum which was misdated August 7, 1986, and which was time-stamped as having been received by the clerk's office on August 10, 1987. The second delivery of the schedules was sent on a date not apparent from the record, with the same misdated memorandum, but was marked as being received by the clerk as of September 15, 1987.[2]

On September 10, 1987, 34 days after the Department transmitted the first set of schedules to the Cook County clerk's office, the assessor registered 409 objections to the classification of over 800 parcels of railroad property in Cook County in order to have those parcels redesignated as locally assessable noncarrier real estate. The Department took no action regarding the objections for some time

---

[2]Although defendants mention in their brief that the schedule containing the disputed parcels in the instant case could have arrived in the latter batch, this suggestion is impugned by the fact that the assessor filed his objections five days before the second batch arrived.

because the official who reviewed such challenges was on leave from the office and was not expected back until after January 1, 1988. Consequently, relying on the representations of Deputy Director Wiley, the assessor's office proceeded on the assumption that its objections would be sustained. Accordingly, it sent assessment notices to the railroads that owned the disputed parcels, in the belief that those assessments would be subject to later corrections after the Department had adjudicated the issue.

The Department finally scheduled hearings on the assessor's objections, which were to commence soon after June 1, 1988. The notification of the intent to hold hearings on the matter was met by the railroads' challenges to the validity of the objections on the ground that they were null and void since they were filed beyond the 30-day time limit imposed by the Department's rules. Plaintiff, which owned realty that had been subjected to the assessor's objections, raised similar claims with the Department. It also refused to pay the local property taxes levied on the property for that year.

On July 1, 1988, Roger D. Sweet, who was then the Director of the Department, advised the assessor that notwithstanding the earlier representations of Deputy Director Wiley, all of the objections filed on September 10, 1987, were untimely; thus, in conformance with Department rules, the railroad's property would be classified for assessment purposes as it was described in the railroad-submitted schedules. Sweet informed the assessor that he could seek a departmental hearing on this issue by filing a formal request for one within 20 days of the mailing of the director's decision, or until July 21, 1988. Although the assessor made a timely request for such a hearing, it was never held.

For the tax years 1988 through 1991, the assessor timely registered the very same objections to the various railroads' classification of realty as he had for the 1987 tax year, including plaintiff's parcels. The Department overruled the objections for each tax year, finding that the parcels in question were properly defined as operating property. Although the assessor timely asked for a hearing as to each year on his objections, the parties admit that such hearings were never held and the circuit court so found.[3]

On April 14, 1989, plaintiff filed its complaint in circuit court for

---

[3]It took the Department almost 10 months, well past the time within which property is required to be assessed, to inform the assessor that his objections were not timely; and the Department never held hearings on the timeliness of his 1987 objections as well as his timely objections for the 1988-1991 tax years. Evidently, whether or not an assessing official's actions are

a declaration that the 1987 local assessment of the disputed parcels was void because the assessor's objections were untimely. It also sought to enjoin the county's assessment of those properties for the 1988-1991 tax years, and thereafter successfully moved for summary judgment on both counts.

The court held as a matter of law that the 30-day time limit for the assessor's filing of objections was mandatory and thus could not be ignored by the Department; therefore, the 1987 objections were untimely. Next, it held that since this matter dealt with government revenue, the Department could not be estopped from enforcing the provision, despite the assurances given to the assessor by the Department's former official, Wiley. It also found that the Department's conclusion that the parcels at issue were operating property was valid until altered via "the Administrative Review process or judicial review," thereby depriving the assessor of the authority to assess them locally. Accordingly, the court enjoined the county officials before it from assessing, levying or attempting to collect any taxes on the property for the tax years 1987-1991 and ordered them to clear the title of the property of any tax liens and vacate all tax judgments. The county official defendants filed a timely notice of appeal.

## I

■ The first issue presented in this appeal concerns the proper construction of the Department's regulation that grants a local assessor 30 days to file objections to a railroad's designation of its realty as noncarrier property. The regulation under consideration states:

> "When the railroad returns [the schedule of property as required by regulation listing its 'non-carrier real estate'], the Department shall transmit to the county clerks copies of [those schedules]. *** The county clerk immediately shall transmit these Schedules to the proper assessment officers for consideration and, if [they] have reason to believe that the items of property set forth in these Schedules do not include all 'non-carrier real estate' of the reporting carrier located within their jurisdiction, they shall, within 30 days from the date of transmittal by the Department, object to the classification adopted by the reporting railroad." (86 Ill. Adm. Code § 110.105 (1986).)

In the case at bar, a copy of the railroads' schedules for the 1987 tax year was sent to the Cook County clerk's office on August 7, 1987, by the Department and the objections of the assessor were filed on September 10, 1987, 34 days later.

---

timely, it takes from the time a future priest is born to the time he becomes Pope for the Department to move, if at all.

Defendants initially suggest that the assessor actually filed the 1987 objections in a timely fashion. Although the presentation of this argument is somewhat nebulous, they appear to rely on the fact that the county clerk's office stamped the schedules as filed on August 10, 1987; therefore, they argue, the assessor's office had 30 days from that date to file objections, a deadline with which it complied. But for this argument to have any merit, we would be required to equate "transmit" with its antonym "receive," a thoroughly absurd suggestion; therefore, the contention is without warrant.

The clerk's time and date stamp signifies not when the schedules were sent by the Department, but rather when they were received by the county clerk. "Transmit," on the other hand, is universally defined as "[t]o send from one person, thing, or place to another; convey." (American Heritage Dictionary 1288 (2d College ed. 1985).) Since, as evidenced by the cover letter which accompanied them, the schedules here were sent from the Department to the clerk on August 7, 1987, under the Department's regulation the assessor had 30 days from that date to file his objections with the Department. In the instant case, the objections were sent 34 days after the schedules were transmitted; thus, those objections were untimely.

■ Next, defendants maintain that Deputy Director Wiley, by extending the deadline for filing objections and by allowing the assessor to assess locally, was merely exercising the discretion of the agency to interpret its own regulations. (See *Lamar v. Illinois Racing Board* (1977), 55 Ill. App. 3d 640, 370 N.E.2d 1241 (holding that administrative agencies are necessarily invested with substantial discretion when construing or applying the rules or regulations that they themselves have promulgated).) Although as a general matter, an agency is entitled to latitude in the interpretation of its own rules, a reviewing court may reverse the exercise of this discretion when it constitutes an abuse, such as where the interpretation is plainly wrong or where it is incompatible or irreconcilable with long-settled constructions. (*Phillips v. Hall* (1983), 113 Ill. App. 3d 409, 447 N.E.2d 418.) Since that certainly is the case here with respect to Deputy Director Wiley's interpretations, the circuit court was correct in disregarding his unprecedented, as well as unwarranted, decisions, which were favorable to defendants.

■ The first of his interpretations *sub judice* was his apparent belief that he was empowered under the rule to extend *sua sponte* the time limit for the transmission of objections from the assessor to the Department. He held this belief even though the rule uses the mandatory "shall" as opposed to the permissive "may," while specifying how soon after transmission such objections should be registered

with the Department. Our supreme court has held that the use of "shall" in an enactment is usually regarded as mandatory, but that this is not a fixed meaning to be applied in every case. (*Fumarolo v. Chicago Board of Education* (1990), 142 Ill. 2d 54, 566 N.E.2d 1283; *Pullen v. Mulligan* (1990), 138 Ill. 2d 21, 561 N.E.2d 585.) Instead, where doubt exists the intended meaning of "shall" is to be drawn from its context. *People v. Singleton* (1984), 103 Ill. 2d 339, 469 N.E.2d 200.

Defendants claim that Wiley was free to consider "shall" in this rule as directory rather than mandatory with regard to the deadline for the filing of objections because it served only to "guide the orderly conduct of business" for the Department and had no effect on the rights of any party. (See *People v. Jennings* (1954), 3 Ill. 2d 125, 128, 119 N.E.2d 781 (stating that an enactment which contains "shall" may be deemed permissive so long as it was "clearly not designed for the guidance of officers or the maintenance of order, system and dispatch in proceedings").) Therefore, according to defendants, Wiley did not abuse his discretion when he relieved the assessor of the obligation to transmit his objections within 30 days.

Defendants' argument, however, misapprehends the purpose of the deadline in the regulation at issue here. The rule does not serve merely as a guide for Department officials, but rather it has all the absolute finality of a statute of repose. Accordingly, when the 30-day period promulgated by the rule elapses without the assessor's filing on or before the deadline, the railroads which submit their schedules to the Department are free to assume that the characterization which they give their property will not be disturbed, especially since they are not parties to and have no notice of, these early interchanges between the Department and the local assessing official, to say nothing about the Department's apparent proclivity to delay and even its inaction. (See footnote 3.) Without strict enforcement of the 30-day limitation, the railroads could never be confident that they will not be subjected to an assessment by the county as well as by the Department while the two dispute who actually is authorized to assess the railroad's real estate. Here, since making enforcement of the 30-day limitation selective would create confusion and could prejudice the railroads operating in this State by subjecting them even to the mere possibility of requiring them to pay their taxes twice until the objections are resolved,[4] the provision must be deemed to be mandatory. (See *Village of Park Forest v. Fagan* (1976), 64 Ill. 2d 264, 356 N.E.2d

---

[4]In fact, two of plaintiff's parcels were sold in the 1991 tax sale, but upon notice that the instant action was pending, both tax purchasers were success-

59 (stating that a provision which contains "shall" must be construed as mandatory where a disregard of the enactment would harm private rights or the public interest); *Farmer v. McClure* (1988), 172 Ill. App. 3d 246, 526 N.E.2d 486 (holding that an administrative rule containing the word "shall" must be construed as mandatory where the rule creates a time period which is provided to safeguard the rights of others).) Nor do we perceive anything in the regulation at issue here that would permit any Department official to grant *ad hoc* or otherwise discretionary exemptions from its clear and unambiguous requirement. Accordingly, the circuit court did not err when it found that Wiley had no authority to disregard the clear language of the rule or to extend the time for filing the local objections beyond that which the rule expressly provides.

Wiley was also acting beyond his authority when he informed the assessor's office to begin assessing the railroad property which it claimed was noncarrier real estate until the Department ruled on its objections. Section 80 of the Revenue Act (Ill. Rev. Stat. 1987, ch. 120, par. 561 (repealed, reenacted & now codified, as amended, at 35 ILCS 200/11—80 (West Supp. 1994)) makes it plain that the assessment of all railroad property is to be made by the Department, thus removing the assessment of such property from the purview of the local assessors. The local officials regain their ability to assess the railroad-owned or controlled property only after the Department formally determines that the land is properly classified as "non-carrier real estate." In effect, the section creates a presumption that the schedules submitted by the railroads correctly describe their property as either operating realty or not, and the local officials may defeat this presumption only by persuading the Department that a parcel was mischaracterized. (See *People ex rel. Brenza v. Chicago & North Western Ry. Co.* (1951), 411 Ill. 85, 103 N.E.2d 85 (holding that the precursor to the Department was the sole authority to ascertain whether railroad property is to be assessed by the State or locally).) Here, by authorizing the Cook County assessor to assess objected-to realty before the Department had made its determination, Wiley ignored the statute. As a result of this disregard of its clear mandate, the Cook County Assessor did not and could not gain from him the power to assess the property, nor did the other county officials named as defendants here have the authority to seek to levy or collect the tax which did or could result from such an assessment on it. In sum,

---

ful in having the sales voided by the circuit court because of the double taxation of the property.

since those officials lacked the power to act as they did as a matter of law, the circuit court correctly enjoined such unauthorized conduct.

## II

■ The assessor argues alternatively that because he reasonably relied on the assurances of Wiley, who was a high-ranking official of the Department of Revenue, that he could file the objections after the 30-day limit had elapsed, the Department should be estopped from its subsequent enforcement of the deadline. The assessor acknowledges the general rule which holds that estoppel usually cannot be applied to the State, but he contends, relying upon *Hickey v. Illinois Central R.R. Co.* (1966), 35 Ill. 2d 427, 220 N.E.2d 415, that this case falls within the exception to the rule which allows its implementation where necessary to avoid a manifest injustice or fraud.

We disagree with the assessor's theory that the actions of the State official here are equatable with the governmental conduct in *Hickey*. In that case, the State and the City of Chicago belatedly asserted their ownership rights in property which had been used and controlled by the railroad. They did so despite the fact that in the 50 years preceding the filing of the suit, each had consistently disclaimed any interest in the property and actually treated the land as though the railroad owned it in fee. The court held that under the extraordinary circumstances present there, estoppel was necessary to avoid the impenetrable confusion that would doubtless affect the numerous parties who had contracted with the railroad in reliance on its apparent fee simple title to the land, and which would be certain to accompany the city's and the State's dilatory assertion of their property interests therein.

Here, in contrast, we are not faced with a combination of repeated overt acts and the passive acquiescence of governmental agents over a number of years, thereby leading the assessor to trust, as would have been reasonable, that the 30-day deadline for the filing of objections would never be enforced. Instead, he acted upon the unsubstantiated statements of Wiley, who clearly was proceeding without any authority, whether it be by statute, rule, regulation or otherwise. We have held that "[a] governmental body cannot be estopped by an act of its agents which exceeds the authority conferred on that agent" (*Miller v. Town of Cicero* (1992), 225 Ill. App. 3d 105, 113, 590 N.E.2d 490, 496), as the circuit court also held in the instant case. The reason for this rule was provided in *County of Cook v. Patka* (1980), 85 Ill. App. 3d 5, 12, 405 N.E.2d 1376, 1381, where the court explained that "[a]nyone dealing with a governmental body takes the risk of ac-

curately ascertaining that he who purports to act for that body stays within the bounds of his authority, and this is so even though the agent himself may have been unaware of the limitations on his authority."

Having determined that Wiley did not have the power to suspend the Department's rule that imposed a 30-day time limit on an assessing official's entry of objections to the classification of railroad realty, we hold that the circuit court was correct in holding that estoppel cannot be applied to bind the Department to Wiley's unwarranted representations. Were the rule otherwise, the law would be at the mercy of the opinions and misjudgments of the State's employees, a thoroughly unwieldy system of government. *Hughes v. Illinois Public Aid Comm'n* (1954), 2 Ill. 2d 374, 379, 118 N.E.2d 14, 17.

### III

Defendants finally argue that the circuit court's implementation of its equitable power in the form of an injunction was improper in light of the fact that an adequate legal remedy, the Administrative Review Law (Ill. Rev. Stat. 1987, ch. 110, par. 3—101 *et seq.* (now 735 ILCS 5/3—101 *et seq.* (West 1992))), existed. They also argue that the injunction was erroneously granted since plaintiff did not exhaust all of the remedies available to it through the Department.

■ As to the 1987 tax year, even if we were to assume *arguendo* that there remained an uncompleted administrative action pending in the Department to which plaintiff was a party, or that a remedy was available to it under the Administrative Review Law when it filed the instant action in the circuit court, neither situation would deprive the circuit court of jurisdiction over the claim asserted here. It is generally recognized, as an exception to the exhaustion of remedies doctrine, that the courts may entertain, in the first instance, issues which present pure questions of *law* or which do not require the agency's particular expertise for their resolution. (*Castaneda v. Illinois Human Rights Comm'n* (1989), 132 Ill. 2d 304, 308-09, 547 N.E.2d 437, 439; *McKenna v. Board of Trustees of the University of Illinois* (1980), 90 Ill. App. 3d 992, 998-99, 414 N.E.2d 123, 128.) Here, en route to determining whether the injunction sought by plaintiff should issue, the court necessarily passed on the issue of whether the 30-day limitation was mandatory or whether it was subject to extensions or nonenforcement, a question of statutory construction which does not require the specialized knowledge of the Department to answer. Thus, since this case falls within an exception to the rule, the doctrine cannot serve to deny the court its equitable power to enjoin defendants.

As to the 1988-1991 tax years, however, the assessor's objections were timely filed and there was pending before the Department the assessor's requests for a hearing on the Department's rejection of those objections when plaintiff filed the instant suit in the circuit court. As previously noted, the parties admit, and the trial court found, that the requested hearings were never held. A resolution as to the validity of the assessor's objections as to the character of the property in question required evidentiary hearings, culminating in findings of *fact* which could be made only by the administrative agency, none of which eventuated.

Plaintiff maintains that the 1988 through 1991 assessments cannot be accorded any recognition because the assessor's applications for a hearing have not been ruled upon and he has therefore failed to exhaust his administrative remedies. We agree. (See *Belt Ry. Co. v. Hynes* (1987), 157 Ill. App. 3d 697, 699, 511 N.E.2d 659, 660 (holding that the circuit court properly dismissed the plaintiff railway's complaint alleging that it had been doubly taxed when the plaintiff failed to pursue its remedies within the Department as provided in the Administrative Review Law), *appeal denied* (1987), 117 Ill. 2d 541, 517 N.E.2d 1084.) Requiring the exhaustion of remedies allows the administrative agency to fully develop and consider the facts of the cause before it; it allows the agency to utilize its expertise; and it allows the aggrieved party to ultimately succeed before the agency, making judicial review unnecessary. (*Illinois Bell Telephone Co. v. Allphin* (1975), 60 Ill. 2d 350, 358, 326 N.E.2d 737, 741-42; 4 K. Davis, Administrative Law Treatise 415 (2d ed. 1983).) The doctrine also helps to protect agency processes from impairment by avoidable interruptions, allows the agency to correct its own errors, and conserves valuable judicial time by avoiding piecemeal appeals. 4 K. Davis, Administrative Law Treatise 415 (2d ed. 1983).

Defendants recognize as much in their assertions, as we have noted at the beginning of this section III, that it is plaintiff that has not exhausted its administrative remedies; accordingly, it becomes totally unnecessary to belabor the point. We need only recite that the Administrative Review Law requires that judicial review may be had of an agency determination only if it "affects the legal rights, duties or privileges of parties and which *terminates* the proceedings before the administrative agency." (Emphasis added.) Ill. Rev. Stat. 1991, ch. 110, par. 3—101 (now 735 ILCS 5/3—101 (West 1992)).

Here, it is undisputed that the assessor's objections were never finally adjudicated. Until that time, the case before the administrative agency had not ripened into the required "determination *** which terminate[d] the proceedings." (Ill. Rev. Stat. 1991, ch. 110,

par. 3—101 (now 735 ILCS 5/3—101 (West 1992)).) Hence, the trial court was correct in holding that "[u]ntil the Department of Revenue's classification is changed through the administrative review process or through judicial review by the Circuit Court of Cook County, the classifications assigned to the three parcels by the [Department of Revenue] are valid and the County may not assess the property." Consequently, the court enjoined defendants from assessing and from levying and collecting taxes on the disputed property, but only until such time as the Department's classification is overturned through legally recognized procedures.

Finally, the assessor argues that the trial court erred in enjoining the local assessment of the subject properties because there was an adequate remedy at law. Yet, injunction has long been recognized as the appropriate method by which an affected party may prevent a public official from performing an act beyond his or her express or implied powers, or from committing an unlawful act. (*Lindsey v. Board of Education* (1984), 127 Ill. App. 3d 413, 468 N.E.2d 1019; *Brown v. City of Chicago* (1953), 351 Ill. App. 366, 115 N.E.2d 354.) Indeed, in a case remarkably similar to the one at bar, *St. Louis Bridge Co. v. Becker* (1939), 372 Ill. 102, 22 N.E.2d 954, wherein the public official made the same argument as defendants raise here, the supreme court affirmed the circuit court's entry of an injunction to restrain the St. Clair County clerk from levying a tax based on an illegal assessment of the Eads Bridge across the Mississippi River. In that case, the supreme court stated:

> "Appellant says, first, that an action in equity will not lie for the reason that appellees have not exhausted their legal remedy as required in cases of tax objection, and cases in this court are cited in support of this contention. This is not such a case. It is not an objection to the method or amount of the tax but presents the claim that the board of review was without power to assess and that the county clerk was about to spread a void assessment upon the books. It may readily be seen that if appellees were to wait until sale for delinquent taxes was sought, a deposit as required by statute would have to be made for the loss of use of which appellees could not be recompensed. It is further seen that to extend both of these assessments would not only entail great additional labor but much confusion in the matter of extending taxes. It is a proper case for equitable jurisdiction." *St. Louis Bridge*, 372 Ill. at 106, 22 N.E. at 956.

Here the assessor was not "about to spread a void assessment upon the books"; he did, in fact, illegally assess the disputed property with the result that two of plaintiff's parcels were sold at the 1991 tax sale, but upon notice of the pendency of the instant action, both

purchasers were successful in having the sales voided by the circuit court because of the double taxation of the property. Thus, what was only sought to be avoided by the *St. Louis Bridge* court actually occurred in this case. Consequently, if *St. Louis Bridge* presented a "proper case for equitable jurisdiction," *a fortiori*, plaintiff could most certainly appeal to the equitable jurisdiction of our courts in order to prevent an unauthorized local assessment and levy. We hold, therefore, that the trial court's grant of an injunction to nullify the assessor's unlawful assessments was equally appropriate here for the reason that the Department's assessments were valid and subsisting until and unless they were overturned by competent authority, and no one disputes that the latter event has not transpired in this case.

Affirmed.

DiVITO and McCORMICK, JJ., concur.